In re S.J. VAN De WATER, Debtor.

Sylvianna VAN De WATER, Plaintiff,

v.

S.J. VAN De WATER, Defendant.

Bankruptcy No. 7–92–13034 MS.
Adv. No. 93–1010 M.

United States Bankruptcy Court,
D. New Mexico.

March 15, 1995.

Linda S. Bloom, Albuquerque, NM.

Robert N. Hilgendorf, Santa Fe, NM, for debtor.

John D. Phillips, Trustee, Albuquerque, NM.

## MEMORANDUM

MARK B. McFEELEY, Bankruptcy Judge.

This is a complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) (Count I), § 523(a)(4) (Count II) and § 523(a)(6) (Count III). After reviewing the pleadings and briefs and hearing the evidence, the Court finds that plaintiff has failed to meet her burden of proof and that the complaint should be dismissed.

## FACTS

This case arises out of the debtor's execution of a guaranty of the debt obligations of a third party. The debtor, S.J. Van De Water, signed a continuing guaranty (guaranty) dated September 29, 1988 in favor of the Santa Monica Bank (bank) of the obligations of Danforth Associates (Danforth), in an amount of up to $100,000 (the note). He signed the guarantee in his own name and in that of the plaintiff, Sylvianna Van De Water, for whom he held a general power of attorney that had been executed in California on January 28, 1981. The debtor signed plaintiff's name on the guaranty pursuant to the power of attorney. When the guaranty was signed, the parties were having marital problems and were living apart. They were divorced in New Mexico on January 25, 1990. The plaintiff received the greater share of the marital estate pursuant to the marital settlement agreement. The settlement did not provide for any liability related to the Danforth guaranty but stated that any undisclosed debts were assumed by the debtor. In May, 1992 the bank made demand upon plaintiff, as a guarantor of the Danforth note, for $72,576 plus interest. On December 16, 1992, the bank filed suit in California against the plaintiff to enforce the guaranty. That action is pending.

The debtor filed his Chapter 7 petition on August 27, 1992. The plaintiff asks the court to declare nondischargeable her claim of indemnity against the debtor for liability she may have to the bank arising from the Danforth guaranty, pursuant to sections 523(a)(2)(A), 523(a)(4) and 523(a)(6). The plaintiff alleges in her complaint that she

expressly advised the debtor before the fact that she would not permit him to use the power of attorney to guaranty the Danforth note and that she did not know until 1992 that he had done so. She also claims that the debtor concealed the existence of the guaranty from her during their settlement negotiations in the divorce. Plaintiff alleges that the debtor's conduct constitutes fraud and breach of his fiduciary duty under the power of attorney. At the close of plaintiff's case, the Court granted the defendant's motion to dismiss as to plaintiff's claim under 523(a)(6) (Count III), finding there was no evidence of willful or malicious injury. The Court denied the motion as to plaintiff's claim under 523(a)(2)(A) (Count I), and took under advisement the motion to dismiss her claim for breach of fiduciary duty pursuant to 523(a)(4) (Count II).

## DISCUSSION

■ Exceptions to discharge are narrowly construed and the burden of proof is upon the party opposing discharge. *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986). The plaintiff must prove the elements of her claims by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The gravamen of plaintiff's complaint is that the debtor acted against her wishes by using the power of attorney to sign her name to the guaranty and then hid this fact from her. She argues that under California law the debtor had no legal authority to use the power of attorney to guaranty the obligations of a third party. Whether execution of a guaranty by an attorney-in-fact lies within the scope of a general power of attorney is a legal issue to be decided by the California state court in the bank's collection action. This Court must consider whether under these facts the debtor engaged in wrongful conduct that should result in the denial of discharge of plaintiff's claim pursuant to 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(4).

Plaintiff testified that the debtor knew the power of attorney was to be used only in connection with the debtor's equipment business, so that plaintiff would not have to lose time from her teaching job to sign the paperwork required to acquire and finance equipment, and that the power had been used only for this purpose. She further testified that in the spring 1988, the debtor asked her permission to co-sign the Danforth note and she expressly withheld her consent. She testified that she was unacquainted with Danforth and did not know that the debtor had guaranteed the note until July, 1989, when Danforth telephoned about renewing the note. She testified that she then asked the debtor about the note and he told her that her name was not on it. On June 2, 1989, plaintiff executed a revocation of the power of attorney, which was recorded in Santa Fe County and Los Angeles County in late July. The plaintiff testified that she did not know what happened to the $10,000 received by debtor at the time he executed the Danforth note. She further testified that during their divorce negotiations the debtor maintained that plaintiff had no liability on the Danforth note and did not disclose he had signed her name as guarantor. Plaintiff stated that the debtor, and subsequently the bank, told her that she was not involved in the Danforth transaction and that she informed her divorce attorney accordingly.

The debtor testified that plaintiff did not limit the scope of the power of attorney, never told him not to become involved in the Danforth transaction, and that the $10,000 was used to pay off a $10,000 note owed to a friend of the parties. He testified that as part of his business he bought and sold equipment, including cars and airplanes. Mr. Danforth testified that he and the debtor had been business acquaintances for a number of years and that in 1988 they discussed the possibility of the debtor co-signing a business loan to finance construction of a building in exchange for $10,000. Both he and the debtor testified there was no discussion of a continuing guaranty until October 5, when the loan transaction was closed. The debtor testified that community assets were used to support the guaranty and the debtor understood the plaintiff would be liable on the guaranty. The debtor claims the plaintiff

and·both divorce attorneys knew about the guaranty well before the divorce was final.

## 1. 523(a)(2)(A).

■ In Count I, Plaintiff asserts that her claim against the debtor should be excepted from discharge pursuant to § 523(a)(2)(A), which denies discharge for a debt for money, property or services obtained by "false pretenses, a false representation, or actual fraud." The determination of whether this section applies depends on whether or not money, etc. was obtained, the character of what was obtained, and the character of the false pretenses, false representation or actual fraud. 15 *Collier on Bankruptcy* § 523.08 (15th Ed.).

■ For 523(a)(2)(A) to apply, "property" must be obtained as a result of the debtor's misrepresentation. Typically, it is the debtor who obtains the property, although debts have been held nondischargeable where the debtor's misrepresentation has benefitted a third party. *See In re Kunkle,* 40 F.2d 563 (E.D.Mich.1930) (judgment for damages nondischargeable where debtor had acted as agent for another in obtaining property by false pretenses); *In re Scheffler,* 1 F.Supp. 582 (W.D.N.Y.1932), *aff'd* 2 F.Supp. 221 (W.D.N.Y.1933), *rev'd on other grounds,* 68 F.2d 902 (2d Cir.1934) (debt nondischargeable where debtor signed a false financial statement to induce creditor to extend credit to third party); *In re Nowell,* 29 B.R. 59 (Bkrtcy.N.D.Miss.1982) ("indirect benefit doctrine" rendered nondischargeable a debt incurred by debtor pursuant to personal guaranty given to creditor for debts of non-filing corporation owned by debtor, where credit extended based on debtor's false financial statement).

■ Plaintiff has not proved false representation, false pretenses, or actual fraud. "Fraud" in a dischargeability claim means fraud in fact, involving moral turpitude or intentional wrong, and not fraud in law, which may exist without imputation of bad faith. 3 *Collier on Bankruptcy* § 523.06[5] (15th Ed.). *Black,* 787 F.2d at 505. *See Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1878). Plaintiff must show that the debtor acted with intent. Even before

§ 523(a)(2)(A) was amended to include "actual fraud," false pretenses and representations under this section were construed to require intentional wrong, in accordance with *Neal. See* 3 *Collier on Bankruptcy,* § 523.08[5] (15th Ed.).

■ Plaintiff must show that the debtor made a representation, knowing it was false, with the intent to deceive, and that the plaintiff relied on the representation, to her detriment. *See In re Nelson,* 561 F.2d 1342, 1346 (9th Cir.1977); *In re Gans,* 75 B.R. 474, 483–84 (Bkrtcy.S.D.N.Y.1987). Intent may be inferred, but may not be presumed; there must be a picture of deceptive conduct. *Id.* at 486. There is no evidence that the debtor obtained the power of attorney by fraud, in 1981. Looking then to the Danforth transaction, even if we accept as true plaintiff's allegation that she instructed the debtor not to sign her name in connection with the transaction, there is no evidence that the debtor made any representation, much less a false one, or gave assurances to her about the transaction upon which she relied.

■ Evidence of other fraudulent intent also is lacking. Plaintiff has not proved the debtor knew that plaintiff would be harmed by his signing the guaranty. He and Danforth had a long-standing business acquaintance, the debtor signed the guaranty in his own right, the guaranty was supported by consideration, and the liability was contingent. Danforth's uncontroverted testimony was that he did not file for bankruptcy until 1992 and was current on the note until February of that year. There is no showing that he was insolvent when the transaction was closed in 1988. Even if the debtor ignored plaintiff's wishes, the exposure to risk created by the guaranty under these facts has the character of a business decision by the debtor and does not rise to the level of fraud.

■ Plaintiff also alleges that the debtor engaged in fraud by failing to disclose the Danforth guaranty during the divorce negotiations. The evidence is conflicting as to whether plaintiff knew about the guaranty at that time. She claims she knew about the note in 1989 but did not know about the

guaranty until 1992; however, notes taken by debtor's divorce counsel in August of 1989 relating to a telephone conversation with plaintiff's counsel refer to the *guaranty* as well as the Danforth note (Ex. A, p. 1). Furthermore, even if the guaranty was undisclosed, the debtor did not profit from the nondisclosure in the divorce. He assumed liability for any undisclosed debt obligations (Ex. 7, par. 6e) and retained a disproportionately small share of the property (Ex. 4, Ex. 8). There was no evidence that at the time of the divorce the Danforth note was in default or that the debtor was contemplating filing bankruptcy to avoid his liabilities. These facts do not support a finding of fraud.

For the foregoing reasons, plaintiff has failed to prove false pretenses, false representation or actual fraud under 523(a)(2)(A).

*2. 11 U.S.C. 523(a)(4).*

In Count II, plaintiff seeks nondischargeability of the debt pursuant to § 523(a)(4) of the Code, which provides that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity...." To prevail under this section, plaintiff must prove that the debtor was acting in a "fiduciary capacity" when he executed the guaranty in her name and that any liability she may have as a result is due to fraud or defalcation. The Court finds that the debtor was not acting in a fiduciary capacity pursuant to 523(a)(4) when he signed plaintiff's name to the guaranty, and that in any event he did not commit fraud or defalcation in doing so.

*Fiduciary capacity.*

 Plaintiff argues that the debtor acted in a "fiduciary capacity" under the power of attorney in signing her name to the guaranty. Debtor counters that Count II should be dismissed because powers of attorney do not fall within the relatively narrow confines of 523(a)(4). After reviewing the evidence and the case law, the Court concludes that under these facts the debtor was not acting in a fiduciary capacity as defined in the Code and the motion to dismiss Count II should be granted.

 The question of whether the debtor acted in a fiduciary capacity is a question of federal law. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986). Although fiduciary capacity under federal law still connotes the idea of trust or confidence, *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976) the general definition of fiduciary—a relationship involving confidence, trust and good faith—is too broad in the dischargeability context. *In re Angelle,* 610 F.2d 1335, 1338–19 (5th Cir.1980). The obligation must arise from an express or technical trust, and not a constructive trust. *Davis v. Aetna Acceptance Company,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934); *In re Kapnison,* 65 B.R. 221 (Bkrtcy.D.N.M.1986). The characteristics of an express trust are (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. *In re Thornton,* 544 F.2d 1005, 1007 (9th Cir.1976).

 The trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. *Ragsdale,* 780 F.2d at 796. In other words, the trust must predate the commission of the wrong, and not be imposed as a result of it. Although the meaning of "fiduciary" is a question of federal law, state law is an important factor in determining whether a technical or express trust exists. *In re Weiner,* 95 B.R. 204, 206 (Bkrtcy. D.Kan.1989). The trust requirement is not limited to trusts arising out of a formal agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *In re Bennett,* 989 F.2d 779, 785 (5th Cir.1993). The requisite fiduciary capacity may exist in an agency relationship as a matter of federal common law. *In re Burgess,* 106 B.R. 612, 620 (Bkrtcy.D.Neb.1989).

On occasion, courts have found that powers of attorney satisfy the requirements of 523(a)(4). *Burgess* (debtor transferred mother's assets to himself pursuant to general power of attorney); *In re Barwick,* 24 B.R. 703 (Bkrtcy.E.D.Va.1982) (debtor misappropriated funds entrusted to him for investment pursuant to power of attorney). In those cases, as well as in others in which discharge of a debt was denied under

523(a)(4) for breach of other fiduciary obligations, the debtor had been entrusted with property of another and then abused that trust. *See e.g. Schneider v. Davis (In re Schneider)*, 99 B.R. 974 (9th Cir. BAP 1989) (trust relationship arose when debtor, who was creditor's minister, therapist and lover agreed to invest funds for creditor, who effectively transferred funds to him which he used for his own purposes).

Plaintiff relies especially on *Burgess*, in which the Bankruptcy Court found that as a matter of federal law certain characteristics of the agency relationship created by the power of attorney satisfied the "fiduciary capacity" requirement of the Code, despite the lack of an express trust. 106 B.R. at 620. Although some of the *Burgess* factors [1] are present in the instant case, in balance *Burgess* is distinguishable. In contrast to the *Burgess* principal, who had relinquished total control of her assets to the attorney-in-fact, when plaintiff gave the power of attorney she did not intend to give up management of her affairs, did subsequently play an active role in their management, and did not act out of weakness or confusion. Although the parties were estranged when the guaranty was signed, they were not divorced for another sixteen months, and I have no evidence from which to conclude that there was an economic conflict-of-interest between them that was exploited by signing the guaranty. *See Id.*

■ In a subsequent case decided by the *Burgess* court, the court clarified that " 'fiduciary capacity' under 523(a)(4) could extend to an agency relationship in which the duties and control exercised by the agent are tantamount to those of a trustee of an *express trust."* *BPS Guard Services Inc. v. Woodhead (In re Woodhead)*, 172 B.R. 628, 631 (Bkrtcy.D.Neb.1994), *emphasis added* (debt-

or did not act in fiduciary capacity where he did not have irrevocable, unrestricted control over property for benefit of a person of limited capacity). Therefore, under the *Burgess* line of cases, the requirements of an express trust must be met, which include exercising control over a trust res belonging to another. *Schneider,* supra. *Gans,* 75 B.R. at 490 ("the money or property on which the debt is based must have been *entrusted* to the debtor/fiduciary") and cases cited therein. Even if plaintiff is correct that under California law an attorney-in-fact exercises the powers of a trustee, for a debt to be nondischargeable as a result the debtor must have acted with respect to specific property.

In this case, however, when the debtor signed the guaranty he was not acting with respect to identifiable property of plaintiff that had been entrusted to him. At most, he created a potential debt obligation that, in the event of default, would encumber the parties' property. *See Huntington National Bank v. Sproul,* 116 N.M. 254, 861 P.2d 935 (1993). *See also Evans v. Pollard (In re Evans),* 161 B.R. 474 (9th Cir. BAP 1993). In *Evans,* a state court judgment rendered against a real estate broker who had failed to obtain option agreements in connection with a land sale was held dischargeable because of the absence of an identifiable trust res. The court recognized that in certain instances a real estate broker can be an express trustee, such as when she receives funds from a client for specific purposes, but found that the general fiduciary obligations that existed between the parties was insufficient to establish fiduciary capacity under 523(a)(4).

*Defalcation and fraud.*

■ Defalcation is the failure to account for money or property that has been entrusted to another. *In re Weber,* 99 B.R.

---

**1.** In *Burgess,* the following characteristics of the agency relationship fulfilled the fiduciary capacity requirement under § 523(a)(4): (1) The power of attorney was a general power of attorney giving the agent control over all the assets of the principal; (2) The power of attorney was durable—it survived the death of the principal; (3) The power of attorney was to be exercised for the sole benefit of the principal; (4) The principal executed the power of attorney intending to give up management of her business affairs in perpetuity; (5) The principal did not in fact subse-

quently play an active role in the management of her affairs; (6) At the time the power of attorney was executed there existed an economic and financial conflict of interest between the principal and the agent; and (7) The principal, Estella Burgess, signed the power of attorney within one week of the death of her husband. Within approximately two years of the execution of the power of attorney, and during the time the power of attorney was in force and effect, a conservator was appointed for Estella Burgess. 106 B.R. at 617.

1001, 1012 (Bkrtcy.D.Utah 1989); *In re Twitchell,* 72 B.R. 431, 435 (Bkrtcy.D.Utah 1987), *rev'd on other grounds,* 91 B.R. 961 (D.Utah 1988), and cases cited therein. It is broadly defined to include the failure of a fiduciary to account for money the trustee received in a fiduciary capacity, regardless of whether the failure resulted from ignorance or negligence. *Gans,* 75 B.R. at 490. While defalcation does not require intentional wrongdoing, it contemplates the existence of a fund over which the fiduciary has control and which is misused. *See e.g., Twitchell* (debtor committed defalcation when acting as president and treasurer of credit union by failing to turn over proceeds of his home sale to credit union, issuing unauthorized payroll checks to himself, and neglecting to withhold payroll taxes from his paychecks); *In re Weber,* 99 B.R. 1001 (Bkrtcy.D.Utah 1989) (corporate president's misuse of cash collateral was failure to account for estate property constituting defalcation). In this case, there can be no defalcation because the debtor did not fail to account for funds entrusted to him.

■ Even if debtor were acting in a "fiduciary capacity" in signing the guaranty, which the Court finds he was not, for the reasons set forth in the analysis of fraud under § 523(a)(2)(A) there was no showing of fraud. Additionally, the debtor could not have defrauded plaintiff with respect to the community property by signing her name to the guaranty because he had committed the community assets by signing the guaranty himself. *See Huntington National Bank,* 116 N.M. 254, 861 P.2d 935 (1993). Cal.Family Code §§ 1100, 1101, 1102 (West 1994 Sp. Pamph). Consequently, any objection plaintiff may have had to becoming involved in the Danforth transaction or any subsequent nondisclosure of the related facts could not have altered the effect of the debtor's signature on the guaranty with respect to their community property.

For the foregoing reasons, the Court finds that the complaint should be dismissed. This memorandum shall constitute the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.