In re Robert J. YOUNG and Donna
M. Young, Debtors.

FOWLER BROTHERS,
Plaintiff–Appellee,

v.

Robert J. YOUNG and Donna M. Young,
Defendants–Appellants.

No. 94–2245.

United States Court of Appeals,
Tenth Circuit.

July 26, 1996.

Craig S. Trenton, Craig Trenton & Associates, Salt Lake City, Utah, for Defendants–Appellants.

Jeffrey J. Buckels, Albuquerque, New Mexico, for Plaintiffs–Appellees.

Before HENRY, McWILLIAMS, Circuit Judges, and KERN,[1] District Judge.

HENRY, Circuit Judge.

This is an appeal from the lower courts' holdings that a debt owed by defendant-appellant Robert J. Young to plaintiff-appellee Fowler Brothers is nondischargeable in Mr. Young's Chapter 7 bankruptcy proceeding. Fowler Brothers filed an adversary proceeding in the U.S. Bankruptcy Court in the District of New Mexico on October 26, 1992 to determine if a state court judgment that it had obtained against Mr. Young[2] was dischargeable in Mr. Young's Chapter 7 bankruptcy proceeding. The bankruptcy court ruled that the portion of Mr. Young's debt that was evidenced by a promissory note, $16,892.82 plus interest, was nondischargeable. Mr. Young appealed the bankruptcy court's decision to the U.S. District Court for the District of New Mexico. The district court affirmed, granted Fowler Brothers' motion to strike Mr. Young's reply brief, and denied Mr. Young's request for oral argument. Mr. Young now appeals, claiming that the district court erred in three ways: first, he claims that it erred in affirming the bankruptcy court's finding that a portion of Mr. Young's debt was nondischargeable; second, he argues that it erred in granting Fowler Brothers' motion to strike his reply brief; and third, he claims that it erred in denying him oral argument.

1. The Honorable Terry Kern, United States District Judge, Northern District of Oklahoma, sitting by designation.

2. The bankruptcy court dismissed with prejudice Fowler Brothers' claims against Donna M. Young. Aplt's App. at 191. Fowler Brothers does not appeal this dismissal.

We exercise jurisdiction pursuant to 28 U.S.C. § 158(d). We remand the case for the bankruptcy court to make a factual finding as to whether Mr. Young intended to deceive Fowler Brothers when he made misrepresentations to it. If he so intended, his debt to Fowler Brothers as evidenced by the promissory note would be nondischargeable under 11 U.S.C. § 523(a)(2)(A). We affirm the district court's grant of Fowler Brothers' motion to strike Mr. Young's reply brief because it was untimely under Federal Rule of Appellate Procedure 31. Finally, we affirm the district court's denial of oral argument for Mr. Young under Bankruptcy Rule 8012 because "the facts and legal arguments [were] adequately presented in the briefs and record and the decisional process would not [have been] significantly aided by oral argument." Bankr.R. 8012. We review the factual findings of the bankruptcy court for clear error and the legal findings of the bankruptcy court and of the district court de novo. *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 876–77 (10th Cir.1986).

## I. BACKGROUND

Mr. Young, an attorney in New Mexico, represented Fowler Brothers, a construction partnership, in the 1970s and 1980s. Mr. Young also operated a real estate development business at that time. In the late 1970s, Fowler Brothers began doing construction projects for Mr. Young. Mr. Young paid for Fowler Brothers' construction work at a reduced rate, and his payments were often deferred. During this period, Mr. Young and Fowler Brothers had an unwritten financial arrangement under which monies they owed one another for construction and legal services would be credited to or deducted from one another's account. This arrangement existed for over ten years. Mr. Young never advised the partners of Fowler Brothers, Ray and Floyd Fowler, at the time this arrangement was made or at any other time that they should talk to another attorney about this arrangement. Fur-

ther, Mr. Young never talked to them about conflicts that might arise between him and the Fowlers as a result of the agreement for exchanging services, nor did he advise them to speak to another attorney about such potential conflicts.

In 1981, Mr. Young executed a promissory note in favor of the Fowlers in the amount of $16,892.82, which represented the amount Mr. Young owed them for construction services over and above what they owed him for legal services as of the date of the note. Mr. Young did not suggest to the Fowlers that they consult with another lawyer concerning the note at the time of its making, or in the course of the 1980s when the statute of limitations was running on the note.

In 1989, when Ray Fowler asked Mr. Young for a document showing the amount that Mr. Young owed the Fowlers, Mr. Young would not execute such a document.[3] The Fowlers then filed suit in New Mexico state district court against Mr. Young for the amount of the promissory note and other monies due on the account, totaling over $100,000, plus interest and punitive damages. As a defense, Mr. Young asserted that the statute of limitations barred Fowler Brothers' claims. The parties settled for $105,000 and reduced the settlement to a judgment. Mr. Young subsequently declared bankruptcy, after which Ray Fowler filed a complaint against Mr. Young with the New Mexico Disciplinary Board. The Disciplinary Board "found insufficient evidence to support any allegations that Mr. Young ha[d] violated the [New Mexico] Rules of Professional Conduct." Aplt's App. at 26.

## II. DISCUSSION

### A. The Dischargeability of Mr. Young's Debt

Neither the bankruptcy court's order nor the district court's order specified upon which subsection of 11 U.S.C. § 523(a) those courts relied in finding Mr. Young's debt to

---

**3.** Ray Fowler claims that in response to this request, Mr. Young indicated that he owed Fowler Brothers nothing. Aplt's App. at 61. However, Mr. Young claims that he acknowledged "at all times" that he owed Fowler Brothers a debt,

*id.* at 134, and that he would not sign a promissory note at Ray Fowler's request because they "had not agreed on an amount owed," *id.* at 141. The district court made no findings regarding this dispute.

Fowler Brothers, as evidenced by the promissory note at issue, nondischargeable. Fowler Brothers argues that two subsections, § 523(a)(2)(A) and (a)(4), prevent the discharge of this debt. *See* Aple's Br. at 12. We hold that the former, but not the latter, subsection may prevent Mr. Young from discharging his debt represented by his promissory note to Fowler Brothers.[4] However, in the absence of factual findings by the bankruptcy court required for us to determine whether § 523(a)(2)(A) is satisfied in this case, we must remand the case for further factual findings.

1. **11 U.S.C. § 523(a)(4), Exception to discharge for "fraud or defalcation while acting in a fiduciary capacity"**

■ 11 U.S.C. § 523(a)(4) prevents a Chapter 7 discharge from discharging "an individual debtor from any debt ... for fraud or defalcation *while acting in a fiduciary capacity*." 11 U.S.C. § 523(a)(4) (emphasis added). Therefore, under § 523(a)(4), Fowler Brothers had to establish the following two elements to prevent the discharge of Mr. Young's debt: a fiduciary relationship between Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the course of that fiduciary relationship. We review de novo whether Fowler Brothers has established these elements. Because we conclude that Fowler Brothers cannot establish the first element, § 523(a)(4) does not prevent Mr. Young from discharging the debt that he owed to Fowler Brothers.

■ For purposes of § 523(a)(4), Mr. Young and Fowler Brothers did not have a fiduciary relationship. The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law. *See Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 251 & n. 2 (6th Cir.1982) (analyzing § 17(a)(4) of the Bankruptcy Act, § 523(a)(4)'s predecessor); *Ball v. McDowell (In re McDowell),* 162 B.R. 136, 139 (Bankr.

N.D.Ohio 1993) (analyzing 11 U.S.C. § 523(a)(4)); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 469 (Bankr.D.N.H.1993) (analyzing 11 U.S.C. § 523(a)(4)); *Gore v. Kressner (In re Kressner),* 155 B.R. 68, 73 (Bankr.S.D.N.Y.1993) (analyzing 11 U.S.C. § 523(a)(4)); *Neal v. United States (In re Neal),* 156 B.R. 529, 533 (N.D.Tex.1993) (analyzing 11 U.S.C. § 523(a)(4)); *Purcell v. Janikowski (In re Janikowski),* 60 B.R. 784, 788 (Bankr.N.D.Ill.1986) (analyzing 11 U.S.C. § 523(a)(4)). However, state law is relevant to this inquiry. *In re Johnson,* 691 F.2d at 251; *In re McDowell,* 162 B.R. at 139; *In re Ducey,* 160 B.R. at 469; *In re Kressner,* 155 B.R. at 73; *Clarendon National Ins. Co. v. Barrett (In re Barrett),* 156 B.R. 529, 533 (Bankr.N.D.Tex.1993); *In re Janikowski,* 60 B.R. at 788. Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. *See Allen v. Romero (In re Romero),* 535 F.2d 618, 621 (10th Cir.1976) (interpreting "fiduciary capacity" as used in § 17(a)(4) of the Bankruptcy Act, § 523(a)(4)'s predecessor, to require a relationship "of trust or confidence, which ... arises whenever one's property is placed in the custody of another"); *Van De Water v. Van De Water (In re Van De Water),* 180 B.R. 283, 289–90 (Bankr.D.N.M.1995) (explaining that in cases where discharge has been denied under § 523(a)(4) for breach of fiduciary obligations, "the debtor had been entrusted with property of another and then abused that trust"). Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). *In re Romero,* 535 F.2d at 621 (interpreting § 17(a)(4) of the Bankruptcy Act to apply only to technical trusts); *Evans v. Pollard (In re Evans),* 161 B.R. 474, 477 (9th Cir. BAP 1993) (limiting "fiduciary capacity" as used in § 523(a)(4) to " 'express or technical trust relationships' " (citation omitted));

---

4. Fowler Brothers' complaint asked the bankruptcy court to "deny [the] discharge of any portion of their [sic] [$105,000] judgment" against Mr. Young. *See* Aplt's App. at 29. However, the bankruptcy court held that only the portion of the debt evidenced by the promissory note, $16,892.82 plus interest, was nondischarge-

able, *id.* at 190, and the district court affirmed this holding, *id.* at 201. Fowler Brothers does not appeal the holding below that the remaining portion of Mr. Young's debt to it, which is the amount of the state court judgment less $16,-892.82 plus interest, is dischargeable. *See* Aple's Br. at iv, 11.

*Kayes v. Klippel (In re Klippel),* 183 B.R. 252, 259 (Bankr.D.Kan.1995) ("In this circuit, 11 U.S.C. § 523(a)(4) applies only to a fiduciary relationship arising from a technical or express trust...."); *In re Van De Water,* 180 B.R. at 289 (requiring a fiduciary relationship under § 523(a)(4) to "arise from an express or technical trust"); *Kartchner v. Kudla (In re Kudla),* 105 B.R. 985, 990 (Bankr.D.Colo.1989) ("In bankruptcy, the meaning of fiduciary is limited in application to an express or technical trust."). Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, *see In re Evans,* 161 B.R. at 477, nor an inequality between the parties' knowledge or bargaining power, *see In re Klippel,* 183 B.R. at 260, is sufficient to establish a fiduciary relationship for purposes of dischargeability. "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy." *In re Romero,* 535 F.2d at 621; *see also In re Evans,* 161 B.R. at 477.

■ In cases where the debtor is an attorney and the creditor is a client, as we have here, the majority of courts that have considered the issue have applied the above principles to require more than an attorney-client relationship alone to establish a fiduciary relationship for purposes of § 523(a)(4). *See In re Kudla,* 105 B.R. at 991 (finding that a fiduciary relationship existed where the creditor relied on the debtor's "status as *escrow agent* and as an attorney to protect [the creditor's] funds" (emphasis added)); *Braud v. Stokes (In re Stokes),* 142 B.R. 908, 909–10 (Bankr. N.D.Cal.1992) (holding that § 523(a)(4) does not cover fiduciary relationships arising simply from an attorney-client relationship); *Gafni v. Barton (In re Barton),* 465 F.Supp. 918, 924 (S.D.N.Y.1979) (reasoning that under Bankruptcy Act § 17(a)(4), the predecessor of Bankruptcy Code § 523(a)(4), where an attorney's former client made a loan to a corporation, of which the attorney was the President, and the attorney guaranteed such loan, the parties intended only a lender-borrower, not a fiduciary, relationship). Courts have generally required a trust relationship to exist between an attorney-debtor and a client-creditor to find a fiduciary relationship for purposes of dischargeability. *See In re Ducey,* 160 B.R. at 470; *In re McDowell,* 162 B.R. at 139; *In re Stokes,* 142 B.R. at 909–10. However, courts have often found the requisite trust relationship to be created by the applicable Rules of Professional Responsibility. *See In re McDowell,* 162 B.R. at 139 (concluding that because the debtor-attorney had a fiduciary duty to preserve the identity of client funds under Ohio's Code of Professional Responsibility, the attorney-debtor was a "fiduciary" under § 523(a)(4)); *In re Ducey,* 160 B.R. at 470 (finding that the New Hampshire Rules of Professional Conduct governing an attorney's possession of his or her client's property put the attorney-debtor on notice that he was placing himself in a fiduciary capacity). Although an ethics rule, Rule 16–108A of the New Mexico Rules of Professional Conduct, applies to this case, as will be discussed *infra* Part II.*A.*2., it is unlike the ethics rules at issue in *McDowell* and *Ducey.* Rule 16–108A does not place an attorney in the position of a trustee. It is simply a disclosure rule governing business transactions between a lawyer and his or her client. As such, Rule 16–108A did not statutorily place Mr. Young in the position of a fiduciary for purposes of § 523(a)(4). *See Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 492 (Bankr.S.D.N.Y.1987) (holding that the relationship between the debtor-attorney and the creditor-client that violated Rule 1.8 of the Model Rules of Professional Conduct, which is the equivalent of Rule 16–108A here, did not constitute a fiduciary relationship for purposes of § 523(a)(4)).

■ Apparently concluding that the courts below based their decisions on § 523(a)(4), Mr. Young argues that the district court erred in affirming the bankruptcy court because the bankruptcy court failed to make a factual finding necessary under § 523(a)(4): that Mr. Young owed Fowler Brothers a fiduciary duty. Therefore, he claims, this court must remand the case to the bankruptcy court for further proceedings. Aplt's Br. at 28. Under Federal Rule of Civil Procedure 52(a), which applies in bankruptcy adversary proceedings, Bankr.R. 7052, the bankruptcy court was required to

"find *the facts* specially," Fed.R.Civ.P. 52(a) (emphasis added). However, a finding regarding the existence of a fiduciary duty is a legal, rather than a factual, finding. Therefore, regardless of whether the bankruptcy court found that Mr. Young owed Fowler Brothers a fiduciary duty,[5] so long as the bankruptcy court made factual findings that "permit a clear understanding of the basis of [its] decision," *Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir.1965), or the facts not found by the bankruptcy court are "clear and undisputed," *id.*, there is no need to remand the case for factual findings by the bankruptcy court. *See also id.* (explaining that factual findings "are not a jurisdictional prerequisite to an appeal"). Applying these principles, we hold that under Rule 52(a), the bankruptcy court's factual findings relating to this issue were sufficient to allow our de novo review of the legal issue of the existence of a fiduciary duty for purposes of § 523(a)(4).

## 2. 11 U.S.C. § 523(a)(2)(A), Exception to discharge for "false pretenses, a false representation, or actual fraud"

 Although § 523(a)(4) does not prevent Mr. Young from discharging his debt represented by his promissory note to Fowler Brothers, § 523(a)(2)(A) may. 11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) *false pretenses, a false representation,* or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]

11 U.S.C. § 523(a)(2)(A) (emphasis added). Thus, to establish that a claim is nondischargeable under this subsection, the creditor must prove the following elements by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991): The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss. Mr. Young made two "false representations" to Fowler Brothers under 11 U.S.C. § 523(a)(2)(A). Mr. Young's first false misrepresentation was that he failed to inform Fowler Brothers of information that the New Mexico Rules of Professional Conduct required him to disclose. Specifically, Rule 16–108A of the New Mexico Rules of Professional Conduct[6] requires an attorney, before entering into a business transaction with his or her client, to disclose the terms of the transaction in writing to the client.

 Mr. Young argues that Rule 16–108A did not apply to his exchange of services agreement with Fowler Brothers be-

---

**5.** The parties disagree as to whether or not the bankruptcy court found that Mr. Young owed Fowler Brothers a fiduciary duty. Fowler Brothers claims that during the bankruptcy judge's telephone hearing, the judge found that Mr. Young owed Fowler Brothers a fiduciary duty. *See* Aplee's Br. at 21. Mr. Young, however, maintains that because the bankruptcy judge's final order stated that the court's holding was based on the judge's "findings of fact and conclusions of law *announced in open court*," Aplt's App. at 190 (emphasis added), and because the bankruptcy judge indicated at the bankruptcy hearing in open court that he would take under advisement the question of whether the lawyer-client relationship was enough to impose a fiduciary duty, *see* Aplt's App. at 177, thus refraining from making a finding in open court, his final order did not include findings as to whether Mr. Young breached a fiduciary duty.

**6.** Rule 16–108A states:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are *fully disclosed and transmitted in writing to the client* in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.
New Mexico Rules of Professional Conduct Rule 16–108A (emphasis added).

cause their exchange of services was a "standard commercial transaction" under an exception to Rule 16–108A. This exception states that Rule 16–108A

> does not ... apply to *standard commercial transactions* between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in [Rule 16–108A] are unnecessary and impracticable.

New Mexico Rules of Professional Conduct Rule 16–108A ABA cmt. (emphasis added). He cites the New Mexico Disciplinary Board's decision that he had not violated Rule 16–108A in support of his argument. The Disciplinary Board based its decision on it finding that the parties' relationship was a "standard commercial transaction." However, the Disciplinary Board's decision has no preclusive effect upon the determination of this question in Fowler Brothers' adversary proceeding. We must give the Disciplinary Board's decision the same preclusive effect to which it would be entitled in New Mexico state courts. *See Marrese · v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381–83, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1985) (holding that in cases exclusively within federal jurisdiction, state law determines the preclusive effect of a prior state court judgment unless an exception to 28 U.S.C. § 1738, the full faith and credit statute, applies); *Amoco Prod. Co. v. Heimann,* 904 F.2d 1405, 1414 (10th Cir.) ("Where a state agency acts in a judicial capacity, resolves facts properly before it and the parties have had an adequate opportunity to litigate, we accord the agency's decision the same preclusive effect to which it would be entitled in the state's courts."), *cert. denied,* 498 U.S. 942, 111 S.Ct. 350, 112 L.Ed.2d 314 (1990); *Bugna v. McArthur (In*

*re Bugna),* 33 F.3d 1054, 1057 (9th Cir.1994) (holding that "in determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the state's law of collateral estoppel"); *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675–76 (11th Cir. 1993) (applying the law of the state where a prior state court judgment was rendered to determine the preclusive effect of that judgment in a bankruptcy proceeding). Although "New Mexico has granted preclusive effect to the findings of administrative agencies acting within their proper capacity," *Amoco Prod.,* 904 F.2d at 1414, the Disciplinary Board's decision has no preclusive effect here because "the parties have [not] had an adequate opportunity to litigate"; *see id.;* the Disciplinary Board did not permit the parties to conduct discovery, to examine witnesses, or to have a hearing of any type; further, it did not allow Fowler Brothers to view or to respond to Mr. Young's response to Fowler Brothers' complaint to the Disciplinary Board.

■ Contrary to Mr. Young's argument, the courts below were correct in holding that Mr. Young's exchange of services with Fowler Brothers was not a "standard commercial transaction" under the exception to Rule 16–108A. Unlike other clients of Fowler Brothers, Mr. Young received Fowler Brothers' construction work at a reduced rate, *see* Aplt's App. at 164–65, and his payments were often deferred, *id.* at 97, 164.[7] Because Rule 16–108A applies, creating a duty for Mr. Young to disclose certain information to Fowler Brothers, his failure to disclose such information constitutes a "false representation" or "false pretenses" under § 523(a)(2)(A). *Cf. Itaparica, Ltd. v. Hargrove (In re Hargrove),* 164 B.R. 768, 772 (Bankr.N.D.Okla.1994) (recognizing that an implied misrepresentation constitutes "false pretenses" for purposes of § 523(a)(2)(A)); *In re Gans,* 75 B.R. at 484 (holding that the failure to disclose information may be charac-

7. We hold that these factors make the parties' business transactions "nonstandard." However, we conclude this for a different reason than did the bankruptcy court. The bankruptcy court reasoned that the promissory note "took the relationship between the parties outside the scope of an ordinary course of business transaction." *See* Aple's Supp.App. at 3. It was not the making of the note that made these transactions nonstandard, but instead the manner in which Fowler Brothers treated Mr. Young more favorably than its other clients.

terized as a misrepresentation for purposes of § 523(a)(2)(A)). Rule 16–108A required Mr. Young to disclose to the Fowlers in writing their exchange of services agreement at the outset of the agreement. *See In re Evans,* 119 N.M. 305, 889 P.2d 1227, 1229 (1995) (per curiam); *In re Schmidt,* 118 N.M. 213, 880 P.2d 310, 312 (1994) (per curiam). Mr. Young admits that he did not make this written disclosure. *See* Aplt's App. at 160.

The second "false representation" that Mr. Young made to the Fowlers was his failure to disclose to the Fowlers the potential conflicts of interest involved in their exchange of services agreement. Mr. Young had a duty to disclose such potential conflicts that developed throughout the parties' agreement. *Cf. In re D'Angelo,* 105 N.M. 391, 733 P.2d 360, 362 (1986) (per curiam) (recognizing that an attorney has a duty to fully inform a client of the attorney's interest in a transaction and of "how such interest might affect the attorney's personal judgment and that the client is free to seek outside legal advice regarding the transaction"), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *In re Rawson,* 103 N.M. 166, 704 P.2d 78, 78 (1985) (recognizing that an attorney has a duty to "recognize and disclose a developing conflict of interest to his clients"); *Van Orman v. Nelson,* 78 N.M. 11, 427 P.2d 896, 902 (1967) (per curiam) (recognizing that an attorney cannot purchase something from a client unless he or she " 'had made a full communication to his [or her] client of all that he [or she] knew of advantage to the client regarding the subject of the negotiations.' " (quoting *In re Barth,* 26 N.M. 93, 189 P. 499, 510 (1920))). An example of one such conflict is the parties' opposing interests in Mr. Young's promissory note becoming stale. The failure to make this disclosure constituted a "false representation" under the first element of § 523(a)(2)(A).

■■■ The second element of § 523(a)(2)(A), the debtor's intent to deceive the creditor in making false representations to the creditor, "may be inferred from the 'totality of the circumstances,' " *In re Gans,* 75 B.R. at 486 (quoting *Eastern Food Serv., Inc. v. Leger (In re Leger),* 34 B.R. 873, 878 (Bankr.D.Mass.1983)), or from " 'a knowingly made false statement,' " *Swanson v. Tam (In re Tam),* 136 B.R. 281, 286 (Bankr.D.Kan. 1992) (quoting *Henry v. McClure (In re McClure),* 99 B.R. 66, 69 (Bankr.D.Kan. 1986)). Unfortunately, we are unable to determine if the facts of this case satisfy the second element of § 523(a)(2)(A) because the bankruptcy court did not make a finding that Mr. Young's misrepresentations were made either with or without the intent to deceive Fowler Brothers. Because the bankruptcy court did not make this required finding, *see* Fed.R.Civ.P. 52(a); Bankr.R. 7052, and because Mr. Young's intent in making his two misrepresentations is less than "clear" on the record, *see Featherstone,* 345 F.2d at 250, we must remand the case for factual findings relating to this issue.

■■■ Although we must remand the case on the second element of § 523(a)(2)(A), we conclude that the third and fourth elements of § 523(a)(2)(A) are satisfied here because Fowler Brothers reasonably relied on Mr. Young's failure to disclose the terms of the services exchange agreement in writing before entering into the agreement and on his failure to disclose the potential conflicts of interest involved in their agreement. *See* Aplt's App. at 99 (Mr. Ray Fowler's testimony that he never consulted another lawyer about his dealings with Mr. Young). This is one of those fabled incidents where silence speaks louder than words. Fowler Brothers' reliance was reasonable based on the fact that the Fowlers knew that Mr. Young was an attorney—in fact their attorney—and that for this reason, as Mr. Ray Fowler testified, *see* Aplt's App. at 90, they trusted him. As a result of Mr. Young's misrepresentations, Fowler Brothers sustained a loss, which satisfies the final element under § 523(a)(2)(A); it never received payment on Mr. Young's promissory note.

### 3. The Divisibility of Mr. Young's Debt

Mr. Young's third basis for arguing that the district court erred in affirming the bankruptcy court's holding that his debt was nondischargeable is his claim that it was error for the district court to find only a portion of his debt, specifically $16,892.82 plus interest, nondischargeable for two reasons. First,

Mr. Young claims that the doctrine of merger prevents dividing the state court judgment against him for purposes of dischargeability. He reasons that once his settlement with Fowler Brothers was reduced to a judgment for $105,000, all of Fowler Brothers' claims against him for money he owed it merged into this judgment, leaving one indivisible debt in the amount of $105,000. We need not consider the merits of this argument because, as Mr. Young admitted at oral argument, he did not raise this argument before the bankruptcy court and therefore did not preserve it for appeal.

■ Mr. Young bases his second argument that the district court erred in finding only a portion of his debt nondischargeable on *Daghighfekr v. Mekhail (In re Daghighfekr),* 161 B.R. 685 (9th Cir. BAP 1993). He claims that the district court erred in affirming the bankruptcy court's "use of § 523 to amend or alter a valid state court judgment," Aplt's Br. at 16, by dividing the debt and by imposing interest on the amount found nondischargeable, *id.* at 15, because under *Daghighfekr,* the bankruptcy court lacked the power to do so. In effect, Mr. Young claims that the consent judgment in this case precluded litigation in the subsequent adversary proceeding that would divide the consent judgment into different amounts.

Contrary to Mr. Young's assertion, *Daghighfekr* and its somewhat questionable rule do not apply here. In that case, the state court below entered a default judgment against the defendant in a civil suit for assault. After the state court awarded the plaintiff over $600,000, making him a judgment creditor, the defendant, a judgment debtor, filed a bankruptcy petition. The plaintiff-creditor commenced an adversary proceeding to have his state court default judgment determined nondischargeable under 11 U.S.C. § 523(a)(6), which creates an exception to discharge "for willful and malicious injury by the debtor to another." The bankruptcy court, determining on its own that the assault was a willful and malicious injury, then found the entire amount of the judgment nondischargeable, which the Ninth Circuit Bankruptcy Appellate Panel affirmed. The appellate panel held that although a

default judgment has no preclusive effect on a bankruptcy court as to the nature of the act causing injury, it does have a preclusive effect as to the amount of damages awarded once the bankruptcy court determines the nature of the act causing injury. *In re Daghighfekr,* 161 B.R. at 686.

■ Here, unlike the state court default judgment at issue in *Daghighfekr,* Fowler Brothers' state court judgment was a settlement or consent judgment. Although we look to the law of New Mexico to determine the preclusive effect in a bankruptcy proceeding of a consent judgment entered by a New Mexico state court, *see Marrese,* 470 U.S. at 381–83, 105 S.Ct. at 1332–33; *Amoco Prod. Co.,* 904 F.2d at 1414; *In re Bugna,* 33 F.3d at 1057; *In re St. Laurent,* 991 F.2d at 675–76, New Mexico law has not yet addressed this issue. However, this circuit has recognized "that consent decrees are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment." *May v. Parker–Abbott Transfer & Storage, Inc.,* 899 F.2d 1007, 1010 (10th Cir. 1990). Thus, a state court consent decree precludes the litigation of an issue in a bankruptcy proceeding "if it is clear that the parties intended [preclusion] as a part of their agreement." *Roeder v. Brown (In re Brown),* 162 B.R. 17, 19 (Bankr.D.Kan.1993); *see also Olson v. United States (In re Olson),* 170 B.R. 161, 167 (Bankr.D.N.D.1994) (holding that a state court consent judgment can preclude the litigation of an issue in a bankruptcy proceeding only where "the consent decree or the agreement itself ... contain[s] ' "far-reaching preclusive language" ' " " 'clearly show[ing] that the parties intended that the issue be foreclosed in other litigation' " (quoting *In re GHR Energy Corp.,* 62 B.R. 226, 232 (Bankr.S.D.Tex.1986) (quoting *Southern Pacific Comm. Co. v. A.T. & T.,* 740 F.2d 1011, 1011 (D.C.Cir.1984)) and 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4443, at 382 (1981), respectively)); *First Ga. Bank v. Halpern (In re Halpern),* 50 B.R. 260, 262–63 (Bankr.N.D.Ga.1985) (allowing a consent judgment to preclude the litigation of an issue in a subsequent bankruptcy proceeding where the judgment con-

tained "detailed and carefully drawn findings of fact" evidencing "a clear and unambiguous expression of the parties' intent"), *aff'd*, 810 F.2d 1061 (11th Cir.1987).

In the state court consent judgment between Fowler Brothers and Mr. Young, the parties did not express an intent that the judgment preclude the litigation of any issues in Mr. Young's bankruptcy proceeding. *See* Aplt's App. at 24. Nor does the record on appeal contain an accompanying consent agreement, in which the parties could have expressed such an intent. *See Olson*, 170 B.R. at 167 (allowing the parties' intent that a consent judgment preclude the litigation of an issue in a subsequent proceeding to be expressed either in "the consent decree or the agreement itself"). Therefore, the consent judgment here has no preclusive effect in Fowler Brothers' adversary proceeding as to the amount of Mr. Young's debt that is nondischargeable in bankruptcy or as to any other issues. Because the state court consent judgment did not preclude the litigation in Fowler Brothers' adversary proceeding of the dischargeability of Mr. Young's debt and because the bankruptcy judge clearly had the power to look behind the state court judgment to determine the dischargeability of Mr. Young's debt, *e.g., Pepper v. Litton*, 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); *Afsharnia v. Roland (In re Roland)*, 65 B.R. 1003, 1005–06 (Bankr. D.Conn.1986), the district court did not err in affirming the bankruptcy court's holding that only a portion of Mr. Young's debt was nondischargeable.

### B. Other Issues

■ Because Mr. Young has not shown that the district court's grant of Fowler Brothers' motion to strike Mr. Young's reply brief prejudiced him in any way, we find that the district court did not abuse its discretion in granting Fowler Brothers' motion. *See Walter v. Morton*, 33 F.3d 1240, 1244 (10th Cir.1994) ("We find neither prejudice to the Defendants nor an abuse of the district court's discretion in ruling before the filing of a reply brief."). Federal Rule of Appellate Procedure 31(a) required Mr. Young to file his reply brief "within 14 days after service of the brief of the appellee," Fed.R.App.P. 31(a), which he admittedly did not do, *see* Aplt's Br. at 33. Therefore, Mr. Young's reply brief was untimely filed. Mr. Young's only excuse for this untimely filing, that Rule 31(a) is ambiguous, *see id.*, is without merit.

■ We further find that the district court did not abuse its discretion in denying Mr. Young oral argument because Mr. Young has not shown that this denial prejudiced him. *See Bratt v. International Business Machs. Corp.*, 785 F.2d 352, 363 (1st Cir. 1986) (requiring "a showing of serious prejudice" to show that the district court abused its discretion in denying oral argument). The district court correctly relied upon Bankruptcy Rule 8012, which provides that "[o]ral argument will not be allowed if … the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Bankr.R. 8012. Contrary to Mr. Young's claim on appeal, *see* Aplt's Br. at 31–32, there is no indication that the district court denied Mr. Young "the opportunity to file a statement setting forth the reason why oral argument should be allowed," as provided by Bankruptcy Rule 8012.

### III. CONCLUSION

We REMAND the case to the bankruptcy court for further factual findings in accord with this opinion regarding the dischargeability of Mr. Young's debt under § 523(a)(2)(A). We AFFIRM the district court's grant of Fowler Brothers' motion to strike Mr. Young's reply brief. We also AFFIRM the district court's denial of oral argument for Mr. Young.