**In re Robert M. STEELE, Debtor.**

**Edward J. Horejs, Plaintiff,**

v.

**Robert M. Steele, Defendant.**

**Bankruptcy No. 02–10052 SBB.
Adversary No. 02–1161 HRT.**

United States Bankruptcy Court,
D. Colorado.

April 24, 2003.

---

**424**

William G. Horlbeck, F. Kelly Smith, Denver, CO, for defendant.

Deanna L. Westfall, Denver, CO, for plaintiff.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the court on cross motions for summary judgment. The Court will deny the motion filed by the Plaintiff, Mr. Horejs, but will grant the motion filed by the Defendant Mr. Steele. For the reasons which follow, the Court holds that, as a matter of law, the relationship of corporate director to individual shareholder in a closely held corporation is not sufficient to make the director a fiduciary of a technical trust such that he is exposed to liability under 11 U.S.C. § 523(a)(4) for a breach of those fiduciary duties.

Fed.R.Civ.P. 56 as applied to bankruptcy cases by Fed. R. Bankr.P. 7056 dictates the standard which this Court must use in ruling a motion for summary judgment. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. This Court exercises great circumspection in the granting of a motion for summary judgment. There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a bona fide dispute which bears on the ultimate resolution of the controversy. *Associated Press v. U.S.*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them"). "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment." *Whelan v. New Mexico Western Oil and Gas Company*, 226 F.2d 156, 159 (10th Cir. 1955).

The standard of proof in dischargeability matters under 11 U.S.C. § 523 is the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, "exceptions to dis-

charge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Cundy v. Woods (In re Woods)*, 284 B.R. 282, 288 (D.Colo.2001) (citing *Bellco First Federal Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997)).

## I. FACTS [1]

Prior to March 1992, Plaintiff Horejs was the sole shareholder, and he and his wife were the officers and directors, of a corporation named Northern Pharmacies at Steele's Inc. ("Northern"). In August of 1991, a new corporation was formed named Steele's Pharmacies, Inc. ("Steele's Pharmacies"). Horejs was named a director of that corporation along with Defendant Steele and a third party, Russell K. Kates. Horejs, Steele and Kates were elected officers of Steele's Pharmacies at the first board meeting in March of 1992. Two thirds of Steele's Pharmacies corporate stock was issued to Steele's Markets, Inc. ("Steele's Markets") and one third of Steele's Pharmacies corporate stock was issued to Horejs as consideration for the sale of his interest in Northern to Steele's Pharmacies. In conjunction with the sale of Horejs' interest in Northern to Steele's Pharmacies, Horejs was employed by Steele's Pharmacies to manage the pharmacies which it owned and operated. In addition to that, Horejs entered into a buy-sell agreement with Steele's Pharmacies which required Steele's Pharmacies to purchase all of the shares of a terminated shareholder within 30 days following the shareholder's termination.

After the formation of Steele's Pharmacies, Inc., and before the first board meeting, Steele and Kates signed a purported corporate resolution giving them the authority to execute notes and to enter into security agreements encumbering the assets of Steele's Pharmacies. The resolution was not voted on by the full board of Steele's Pharmacies and was not a topic of discussion or action at any board meeting. Horejs was unaware of this resolution at the time of its execution. In 1998 or 1999, Steele and Kates gave personal guarantees to Nash Finch Co. in connection with a loan made to Steele's Markets. Steele and Kates also pledged the assets of Steele's Pharmacies to secure the loan made to Steele's Markets. There is no record of a board meeting of Steele's Pharmacies to approve the encumbrance of its assets and it appears that Horejs was unaware that the assets of Steele's Pharmacies had been encumbered for that purpose.

Despite being an officer, shareholder and manager of Steele's Pharmacies, Horejs was generally excluded from the decision making process in the operation of Steele's Pharmacies. Decisions as central to the operation of Steele's Pharmacies as the bulk purchase of inventory of other pharmacies were voted on by the board of Steele's Markets, as if the same board of directors controlled both corporations. It appears that Steele and Steele's Markets generally treated Steele's Pharmacies as if it were simply a part of Steele's Markets and as if its assets were part of the assets of Steele's Markets. There seems to have been little or no effort on the part of Steele and Steele's Markets to observe the separate corporate identity of Steele's Pharmacies.

---

1. These are the salient facts as claimed to be undisputed by Plaintiff. Defendant's response did not clearly delineate the factual issues which he thinks are in dispute. However, in light of the result the Court reaches, any disagreement that Defendant may have with Plaintiff's list of undisputed facts is not material to the Court's decision and this recitation is not intended to represent a final determination of the factual issues.

On February 4, 2001, Horejs employment with Steele's Pharmacies was terminated. Steele's Pharmacies did not perform on its obligation under the buy-sell agreement to repurchase Horejs stock upon the termination of his employment.

In April of 2001, Steele's Pharmacies sold three of its operating pharmacies to Professional Pharmacy Services. As part of the asset purchase agreement for that transaction, Steele's Pharmacies reaffirmed the security agreement to Nash Finch, Co. It appears that no meeting of the board of directors was held by Steele's Pharmacies to approve the sale or the contents of the asset purchase agreement prior to the consummation of the sale. Although a special meeting of the Steele's Pharmacies board was called three months after the sale, in June of 2001, for the purpose of ratifying the sale, the sale was never ratified by the Steele's Pharmacies board of directors. The full proceeds of the sale of Steele's Pharmacies went to secured creditors McKesson HBOC, Inc., and Nash Finch Co. None of the proceeds stayed with Steele's Pharmacies. Nash Finch was primarily a creditor of Steele's Markets. McKesson was the major pharmaceutical supplier to Steele's Pharmacies. At the time of the negotiation of the sale, the parties believed that McKesson's lien was superior to Nash Finch's lien, but due to a problem with McKesson's lien perfection, Nash Finch received the majority of sale proceeds. As the pharmacies sold were the only assets of Steele's Pharmacies that had substantial value, Horejs' stock in Steele's Pharmacies is now greatly devalued if not completely worthless.

The Court further notes that, in addition to Defendant's bankruptcy case, this business failure has spawned bankruptcy cases by Russell K. Kates and Carol A. Kates, (02–28379 DEC, filed November 12, 2002), and Steele's Markets, Inc. (01–11323 SBB, filed on February 8, 2001, as a Chapter 11 reorganization and converted to a Chapter 7 liquidation on November 15, 2001).

## II. DISCUSSION

Plaintiff Horejs brought this action pursuant to 11 U.S.C. § 523(a)(4) in an effort to except from discharge a debt which he claims is owed to him by Defendant Steele. That section provides that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> . . . .

11 U.S.C. § 523(a)(4).

■ In order for Plaintiff to prevail on its motion for summary judgment, he needs to first demonstrate the existence of a relationship between Defendant Steele and Plaintiff Horejs such that Defendant owed Plaintiff a fiduciary duty that rises to the level which is necessary to find liability under 11 U.S.C. § 523(a)(4). If Plaintiff clears that hurdle, then he would have to show that a breach of that duty occurred which caused him damages.

■ Defendant's motion for summary judgment may be granted by showing, based on undisputed facts, either that there is no fiduciary duty running from a corporate director to an individual shareholder which is cognizable under 11 U.S.C. § 523(a)(4), or that, even if such duty exists, the duty was not breached or that Plaintiff suffered no damages resulting from any breach which may have occurred. The Court grants summary judgment in favor of Defendant because it is satisfied that the duties owed to an individual shareholder by a corporate director are

not those of a fiduciary under an express trust or a technical trust which would be required for this Court to find liability under 11 U.S.C. § 523(a)(4).

The question of whether or not there is a § 523(a)(4) fiduciary relationship is a matter of federal law. *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996). "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith ... nor an inequality between the parties' knowledge or bargaining power ... is sufficient to establish a fiduciary relationship for purposes of dischargeability." *Id.* at 1372; *see also, Upshur v. Briscoe*, 138 U.S. 365, 375, 11 S.Ct. 313, 317, 34 L.Ed. 931 (1891) ("Within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms."). "Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship exist[s] under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)." *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996) (citations omitted).

Express trusts are those trust relationships which are intentionally entered into by the parties. An express trust may involve a formal declaration of trust or a situation where the intention of the parties to form a trust relationship may be inferred by the surrounding facts and circumstances. *In re Turner*, 134 B.R. 646, 649 (Bankr.N.D.Okla.1991). There is no allegation that Steele and Horejs entered into an intentional trust relationship. Any trust relationship in this case would have to be a technical trust. A technical trust is distinguished from an express trust in that the intention of the parties is not relevant. In a technical trust, the trust obligations are imposed on the parties. *Id.*

Colorado state courts frequently find that corporation directors have breached fiduciary duties to shareholders. *See. e.g., Michaelson v. Michaelson*, 939 P.2d 835, 841 (Colo.1997) (en banc) (director and 50% shareholder breached fiduciary duty to other 50% shareholder by: allowing corporate assets to be sold at a tax sale and then buying them for himself; failing to make distribution to other shareholder upon purported dissolution of corporation; and filing false documents with the Secretary of State in a wrongful attempt to dissolve the corporation without notice to other shareholder); *Van Schaack Holdings v. Van Schaack*, 867 P.2d 892, 897 (Colo.1994) (en banc) (directors breached fiduciary duty to minority shareholder in connection with corporation's purchase of minority shareholder's stock); *Kullgren v. Navy Gas & Supply Co.*, 110 Colo. 454, 135 P.2d 1007, 1010 (1943) (en banc) (directors breached their fiduciary duty by exercising powers under a voting trust to their personal advantage and to the detriment of remaining shareholders). The question, then, is whether the fiduciary relationship spoken of in the cases between directors and shareholders is the general duty of confidence, trust, loyalty and good faith which derives from the director's superior status, power and knowledge or whether it can be said to be a technical trust which would elevate it to § 523(a)(4) status.

A review of the cases reveals a significant quantity of language regarding the fiduciary relationship of a director to the corporation and its shareholders. *See. e.g., Pepper v. Litton*, 308 U.S. 295, 306, 60

S.Ct. 238, 245, 84 L.Ed. 281 (1939) ("A director is a fiduciary. So is a dominant or controlling stockholder or group of stockholders. Their powers are powers in trust." (citations omitted)); *Pueblo Bancorporation v. Lindoe, Inc.,* 37 P.3d 492, 498 (Colo.Ct.App.2001) ("The officers, directors, and controlling shareholders of a corporation have a fiduciary duty to act in good faith and in a manner they reasonably believe to be in the best interests of the corporation and its shareholders. In a closely held corporation, the relationship between directors and shareholders is treated like a relationship between partners. Directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and cannot use their power to harm the other shareholders." (citations omitted)); *Van Schaack Holdings v. Van Schaack,* 867 P.2d 892, 897 (Colo.1994) (en banc) ("We have previously recognized that corporate directors owe a fiduciary duty to shareholders in exercising their responsibilities. This duty encompasses the requirement that directors of a corporation and its controlling shareholders act with an extreme measure of candor, unselfishness, and good faith in relation to remaining shareholders." (citations omitted)). But the language in those cases focus on general duties of fair dealing owed by corporate officers and directors in finding fiduciary duties rather than focusing on specific law which imposes such fiduciary duty. In the 10th Circuit, when a fiduciary duty under 11 U.S.C. § 523(a)(4) is found, the cases universally find a much more specific basis for the duty than those general duties of good faith and fair dealing.

The 10th Circuit case of *Allen v. Romero (In re Romero),* 535 F.2d 618, 621–22 (10th Cir.1976), does find liability under § 17(a)(4) of the Bankruptcy Act of 1898 [2] based on a New Mexico statute [3]. That law imposed fiduciary obligations on a contractor to account for money advanced for the specific purpose of paying subcontractors and materialmen. *Romero* draws the critical distinction between a "fiduciary capacity **imposed** by law, rather than one **implied** by law." *Romero,* 535 F.2d at 622 (emphasis added). The same type of fiduciary duty was found in *Anderson v. Currin (In re Currin),* 55 B.R. 928 (Bankr. D.Colo.1985). In that case, the court found that a real estate broker licensing statute [4] established fiduciary duties under 11 U.S.C. § 523(a)(4) with regard to specific funds coming into the Broker's hands. *Currin,* 55 B.R. at 933.

The Court finds nothing in the Colorado corporation statutes, and Plaintiff directs us to none, that imposes a fiduciary duty on directors of a corporation running in favor of individual shareholders based upon that status which rises to the level of an express or a technical trust necessary to find liability under 11 U.S.C. § 523(a)(4). Plaintiff argues that Colo. Rev.Stat. § 7–108–401 creates such fiduciary duties. Indeed, that section states in relevant part as follows:

> (1) Each director shall discharge his or her duties as a director, including his or her duties as a member of a committee, and each officer with discretionary au-

---

**2.** Section 17(a)(4) was the predecessor to 11 U.S.C. 523(a)(4). That statute stated that *debts were excepted from discharge when they were "created by ... fraud, embezzlement, misappropriation, or defalcation while acting as an officer, or in any fiduciary capacity."* Ch. 541, § 17, 30 Stat. 544, 550–51 (repealed 1978).

**3.** N.M. Stat. Ann. § 67–35–26 N.M.S.A. (1953) (repealed).

**4.** Colo.Rev.Stat. § § 12–61–113(g) & 12–61–113(g.5).

thority shall discharge his or her duties under that authority:

(a) In good faith;

(b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(c) In a manner he or she reasonably believes to be in the best interests of the corporation.

Colo.Rev.Stat. § 7–108–401(1). But that language falls short of a § 523(a)(4) technical trust because it simply describes general duties of good faith and fair dealing but does not reference any money or property to which those duties are applicable. By contrast, the New Mexico law under consideration in *Romero* created duties with regard to specific funds put into the hands of a contractor by his principal. *Romero*, 535 F.2d at 621; N.M. Stat. Ann. § 67–35–26 (1953) (repealed).

Plaintiff alleges no special facts or circumstances, over and above Horejs' status as a shareholder and Steele's status as a director to justify its claim that Steele owed Horejs a § 523(a)(4) fiduciary duty. He does allege acts that might support a piercing of the corporate veil claim such as lack of board of directors meetings for Steele's Pharmacies separate from Steele's Markets; the Steele's Markets board purporting to act for Steele's Pharmacies; and pledging of Steele's Pharmacy assets to secure obligations of Steele's Markets. Those facts, in state court, might support an action by the corporation against its board members and possibly a breach of fiduciary duty claim by an individual shareholder against board members based upon the utter disregard of Steele and Kates for the interests of the minority shareholder. But, it takes more than that to establish a fiduciary duty under § 523(a)(4).

Judge Pusateri in the District of Kansas set out a three part test to determine whether a statute establishes the basis to find a technical trust. *Medved v. Novak (In re Novak & In re Lattimore)*, 97 B.R. 47 (Bankr.D.Kan.1987). That test was cited with approval by the 10th Circuit Bankruptcy Appellate Panel in *Employer's Workers Compensation Association v. Kelley (In re Kelley)*, 215 B.R. 468, 473 (10th Cir. BAP 1997). In *Kelley*, the debtor was an insurance agent. He entered into a contract with The Employer's Workers Compensation Association [TEWCA] which made him primarily liable to TEWCA for the premiums on all policies placed by him. In addition, Oklahoma statutes impose certain duties on persons serving in his capacity. In particular, the statute states that

> Every life or accident and health insurance broker acting as such in this state shall be responsible in a fiduciary capacity for all funds received or collected as a life or accident and health insurance broker and shall not mingle any such funds without the express consent of his principal, with the broker's own funds or with funds held by the life or accident and health insurance broker in any other capacity.

Okla. Stat. Ann., tit. 36, § 1465(E).

■ The test enunciated in *Novak*, and applied in *Kelley*, states that a state statute must include three elements in order for it to impose fiduciary duties which may be recognized under § 523(a)(4). "Those elements are: (1) that the trust res must be defined by the statute; (2) that the statute must spell out the fiduciary duty; and (3) that the statute must impose a trust on funds prior to the act creating the debt." *Novak*, 97 B.R. at 59. In *Kelley* the B.A.P. found that the above quoted statute failed the second part of the *Novak* test. According to the court, "[s]imply restricting commingling of funds does not sufficiently define the fiduciary duty imposed

here to bring the statute within § 523(a)(4)." *Kelley*, 215 B.R. at 473. Thus, even though the statute states that the agent serves in a fiduciary capacity, without more, that is not enough to implicate § 523(a)(4) liability.

By contrast, the *Kelley* court did find that another separate provision of the Oklahoma insurance statutes [5] does impose fiduciary duties under § 523(a)(4). The court found that Okla. Stat. Ann. tit. 36, § 1445 adequately identifies the trust res as all of the "insurance charges or premiums collected by an administrator or an insurer or trust" and that the statute is specific in spelling out the debtor's fiduciary duties by specifying those uses to which the funds could be put. *Kelley*, 215 B.R. at 474. The court remanded the matter back to the bankruptcy court to determine whether or not the defendant was covered by the statute. *Id.* at 475.

From this reasoning, Plaintiff's reliance on Colo.Rev.Stat. § 7–108–401, *see infra,* as a source for a § 523(a)(4) fiduciary duty between corporate directors and share-holders is misplaced. It fails the first part of the *Novak* test in that it makes no reference to any trust res. As to the second part of the test, the statute speaks of a director's duties in only the most general of terms. The statutory language falls short of establishing a fund or trust res and prescribing specific duties with respect to trust property that could serve as grounds to find a technical trust under § 523(a)(4).

It is helpful to examine the director/shareholder relationship in comparison to other relationships which have been found to fall short of forming a basis for liability under § 523(a)(4). In *Holaday v. Seay (In re Seay)*, 215 B.R. 780 (10th Cir. BAP 1997), the B.A.P. addressed the applicability of § 523(a)(4) in the context of a common law partnership.

Initially, the court observed that 10th Circuit courts have been uniform in concluding that the Uniform Partnership Act does not create § 523(a)(4) fiduciary duties between partners. *See, e.g., Beebe v. Schwenn (In re Schwenn)*, 126 B.R. 351,

---

**5.** Okla. Stat. Ann. tit. 36, § 1445 provides:

A. All insurance charges or premiums collected by an administrator for an insurer or trust and all return premiums received from the insurer or trust shall be held by the administrator in a fiduciary capacity. These funds shall be immediately remitted to the person entitled to the funds or shall be deposited promptly in a fiduciary bank account established and maintained by the administrator.

B. If charges or premiums deposited in a fiduciary account have been collected for more than one insurer or trust, the administrator shall keep records showing the deposits to and withdrawals from the account for each insurer or trust. The administrator, upon request of an insurer or trust, shall furnish copies of the records pertaining to deposits to and withdrawals from the account for that insurer or trust.

C. The administrator shall not pay any claim by withdrawals from a fiduciary account unless provisions for said withdraw-als are included in the written agreement between the insurer or trust and the administrator. The written agreement shall authorize withdrawals by the administrator from the fiduciary account only for:

1. remittance to an insurer or trust entitled to a remittance; or

2. deposit in an account maintained in the name of an insurer or trust; or

3. transfer to and deposit in an account established for payment of claims, as provided for by subsection D of this section; or

4. payment to a group policyholder for remittance to the insurer or trust entitled to such remittance; or

5. *payment of commission, fees, or charges to the administrator;* or

6. remittance of return premiums to the person entitled to such return premiums.

D. All claims paid by the administrator from funds collected on behalf of the insurer or trust shall be paid on drafts or checks authorized by the insurer or trust.

353 (D.Colo.1991); *Susi v. Mailath (In re Mailath)*, 108 B.R. 290, 293 n. 1 (Bankr. N.D.Okla.1989); *Medved v. Novak (In re Novak & In re Lattimore)*, 97 B.R. 47, 59 (Bankr.D.Kan.1987); *Arnett v. Weiner (In re Weiner)*, 95 B.R. 204, 206 (Bankr. D.Kan.1989). If anything, the Uniform Partnership Act goes significantly farther than Colo.Rev.Stat. § 7–108–401 in setting out duties of partners. The Colorado version of the UPA states in relevant part: "Every partner must account to the partnership for any benefit, and hold as trustee for the profits derived by him or her without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him or her of its property." Colo.Rev.Stat. § 7–60–121. Similar wording also appears in the Oklahoma and Kansas Statutes as well. Okla. Stat. tit. 54, § 1–404; Kan. Stat. Ann. § 56a–404.

The *Seay* court went on to examine whether or not Oklahoma state common law provides a basis for the requisite level of fiduciary duty to implicate § 523(a)(4). It observed that some lower court opinions in the Tenth Circuit prior to *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367 (10th Cir.1996), found a § 523(a)(4) fiduciary duty under state common law. *See, e.g., Beebe v. Schwenn (In re Schwenn)*, 126 B.R. 351, 353 (D.Colo.1991) (partner who holds partnership property in his own name holds it in trust for the partnership); *Susi v. Mailath (In re Mailath)*, 108 B.R. 290, 293 (Bankr.N.D.Okla.1989) (Oklahoma common law evidences an intent to create a trust relationship between partners from the inception of the partnership and requires a duty of utmost good faith and duty to render accounting as to partnership property to other partners). However, the B.A.P. went on to find that, "even though the Oklahoma state courts may approve of a general policy that creates a fiduciary duty between joint venturers, this policy is not sufficient to fulfill the Tenth Circuit requirements of a common law trust for purposes of § 523(a)(4)." *Seay*, 215 B.R. at 787; *see also Cundy v. Woods (In re Woods)*, 284 B.R. 282, 288 (D.Colo.2001) ("the generic duties of trust and confidence owed by partners or joint venturers [under Colorado law] do not create a § 523(a)(4) fiduciary relationship").

The very earliest cases interpreting predecessors to the current § 523(a)(4) recognized that excepting a debt from discharge for a breach of a fiduciary duty requires much more than is present in the types of relationships common in the commercial world. The Supreme Court, in the case of *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202, 11 L.Ed. 236 (1844), held that even the relationship of principal to agent does not create § 523(a)(4) liability. In that case, the court examined the first section of the, then current, bankruptcy law. That section excepted debts created through a breach of fiduciary duty by providing that:

> "all persons whatsoever, residing in any state, territory, or district of the United States, owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity," shall, on a compliance with the requisites of the bankrupt law, be entitled to a discharge under it.

*Id.* at 208. In that case, the debtor acted as a broker for the plaintiff. He sold 150 bales of the plaintiff's cotton, received the money on behalf of his principal and then misapplied the funds. The court phrased the issue as "whether a factor, who retains the money of his principal, is a fiduciary debtor within the act." *Id.* The court concluded:

If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. . . . The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

In the case of *Hennequin v. Clews*, 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1884), Hennequin & Co. deposited with Clews & Co. certain securities to be used as collateral to secure Hennequin's obligations to Clews. But, instead of holding the securities as it was obligated to do under its agreement, Clews deposited them with a third party as collateral for its own obligations. After the Hennequin debt was retired without default, Hennequin made demand for return of its securities. However, Clews' business had failed and it was unable to make return of Hennequin's property. In determining whether the debt was discharged in Clews' bankruptcy proceedings, the Court said that

> we have to decide the question whether a discharge in bankruptcy under the act of 1867 operates to discharge the bankrupt from a debt or obligation which arises from his appropriating to his own use collateral securities deposited with him as security for the payment of money or the performance of a duty, and his failure or refusal to return the same after the money has been paid or the duty performed; or whether a debt or obligation thus incurred is within the meaning of the thirty-third section of said act, (section 5117 of the Revised Statutes,) which declares that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act."

*Id.* at 678, 4 S.Ct. 576. The Court went on to say:

> The present case is not precisely like either that of *Chapman v. Forsyth* or *Neal v. Clark;* [6] but it is very difficult to distinguish it in principle from the cases of commission merchants and factors failing to account for the proceeds of property committed to them for sale. There is no more—there is not so much—of the character of trustee in one who holds collateral securities for a debt, as in one who receives money from the sale of his principal's property,—money which belongs to his principal alone, and not to him,—and which it is his duty to turn over to his principal

**6.** *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877), construed the "thirty-third section of the bankruptcy law of 1867." Under state law, Neal was guilty of constructive fraud where he had purchased bonds from a decedents estate and where the executor lacked authority and acted fraudulently in selling him the bonds. However, the state court found that he was not guilty of actual fraud. *Id.* at 707. The Court found that constructive fraud did not rise to the level of moral turpitude and intentional wrongdoing that was required to find a debt nondischargeable for fraud under the bankruptcy law of 1867. *Id.* at 709.

without delay. The creditor who holds a collateral, holds it for his own benefit under contract. He is in no sense a trustee. His contract binds him to return it when its purpose as security is fulfilled; but if he fails to do so it is only a breach of contract, and not a breach of trust.

*Id.* at 682, 4 S.Ct. 576. *See also, Matter of Tran,* 151 F.3d 339 (5th Cir.1998) (lottery ticket sales agent does not hold lottery proceeds under a § 523(a)(4) trust notwithstanding statutory requirement to account for proceeds and pay them over to state); *In re Van De Water,* 180 B.R. 283, (Bankr. D.N.M.1995) (holder of power of attorney did not act as a fiduciary to his principal).

Thus, even in those cases, where an agent or a mortgagee holds identifiable property of another and is bound to return that property under his agreement, there is no trust relationship that operates to except those debts from discharge. It takes more than identifiable property, and a legal obligation to return it, to create fiduciary obligations under § 523(a)(4). It takes either an express trust or specific detailed fiduciary duties imposed by statute or a common law doctrine—a technical trust.[7]

*Chapman* and *Hennequin* clearly demonstrate the Supreme Court's intention to limit the exception to discharge for breach of fiduciary duties such that normal commercial, business and contractual relationships are not implicated. To be sure, duties of good faith and fair dealing are implied in such relationships. Many such commercial relationships involve property which one of the parties is bound by contract to preserve and return. But the Court has made it clear that these are not the type of relationships which form fiduciary duties cognizable under the bankruptcy laws.

At least part of Horejs' complaint relates to just such a contractual relationship.[8] His buy-sell agreement with the Steele's Pharmacies certainly is the type of common commercial contractual relationship which the Supreme Court refuses to turn into a fiduciary relationship. In this district, even granting of a power of attorney to a partner, which gave him the authority to obligate the other partners to repay a debt, was found to be nothing more than just such an ordinary commer-

---

**7.** Even though *Chapman* and *Hennequin* were decided under prior bankruptcy laws, the cases decided under § 523(a)(4) of the current Bankruptcy Code do not differ from those decided under its predecessors with respect to the analysis of fraud or defalcation while acting as a fiduciary. *Ragsdale v. Haller,* 780 F.2d 794, 796 n. 1 (9th Cir.1986); *Matter of Angelle,* 610 F.2d 1335, 1341 n. 12 (5th Cir.1980). The Court also notes that, despite the fact that the analytical framework of the various versions of the bankruptcy laws dealing with dischargeability of debts incurred by fiduciaries has not changed over the years, others have opined that the courts of appeal have had some difficulty making sense of and consistently applying the Supreme Court precedents in this area. In *Discount Home Center v. Turner (In re Turner),* 134 B.R. 646 (Bankr.N.D.Okla.1991), Judge Mickey Dan Wilson gives a scholarly history of Supreme Court precedent in this area and the lines of decisions from the courts of appeal applying those precedents to particular facts.

**8.** Horejs has not been crystal clear on the question of the source and amount of his damages in this matter. His original theory was to ask this court to pass on the issue of whether or not any debt owed by Steele to Horejs is dischargeable and to continue state court litigation for the purpose of determining damages. Thus, the pleadings filed in this court contain only rather general discussion of damages. Nonetheless, the Court has considered the breach of the buy-sell agreement to be one source of Horejs' damages and the diminution of the value of Horejs' interest in Steele's Pharmacies to be the other source of alleged damages.

cial relationship. *Cundy v. Woods (In re Woods),* 284 B.R. 282, 290 (D.Colo.2001).

In the relationship of director to shareholder, there are certainly statutory as well as traditional common law duties of good faith and fair dealing. If this case were to proceed to trial, it is certainly possible (if not probable) that Plaintiff would be able to demonstrate that Steele breached those duties of good faith and fair dealing. But those general duties do not constitute a technical trust.

Plaintiff has pointed to no specific trust property or any specific duties imposed by law with respect to such property. The general duty of good faith and fair dealing described in Colo.Rev.Stat. 7–108–401 merely refers to the manner in which a director or officer of a corporation must discharge his or her duties.[9] It makes no reference to any trust property. It does not describe specific duties. There is nothing either in the statutory law or common law of this state that rises to the level of a technical trust in the relation of director to shareholder.

### III. CONCLUSION

The Court finds that Defendant, as a director of a closely held corporation, does not stand in the relationship of a fiduciary to Plaintiff, a minority shareholder, such that any liability incurred as a consequence of that relationship may be excepted from discharge under 11 U.S.C. § 523(a)(4). Having found that Defendant is not a fiduciary with respect to Plaintiff, the Court will not reach the question of whether or not defalcation has occurred.

Accordingly, Plaintiff's Motion for Summary Judgment will be DENIED and Defendant's Motion for Summary Judgment

will be GRANTED. Judgment will enter in conformity with the foregoing opinion.

---

9. The Court feels constrained to observe that Mr. Horejs served as the manager of Steele's Pharmacies as well as an officer and director of the corporation for nine years. As a director and officer of Steele's Pharmacies, any duties which the law imposes upon Mr. Steele were imposed upon Mr. Horejs as well.